DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal is from the November 15, 2004 judgment of the Lucas County Court of Common Pleas, Probate Division, which granted the adoption of Brianna Marie D. by petitioner, Michael D. Upon consideration of the assignments of error, we reverse the decision of the lower court. Brian E., the natural father and appellant, asserts the following assignments of error on appeal:
 {¶ 2} "I. The Trial Court's finding that the finalization of the Adoption of Brianna [D.] was in the best interest of the child was not supported by the evidence and is contrary to the evidence that was presented.
 {¶ 3} "II. The Appellant received ineffective assistance of counsel, as counsel's errors were so serious that the Appellant did not receive the guarantee of Ohio Revised Code 2151.352."
 {¶ 4} This case involves the petition for a step-parent adoption of a six-year old child born in May 1997. Appellant, the natural father of the child, contested the adoption and counsel was appointed to represent him. The court found that appellant had failed, without justifiable cause, to provide for the maintenance and support of the child for a least one year immediately prior to the filing of the adoption petition. Therefore, the court concluded that appellant's consent to the adoption was unnecessary. Appellant does not challenge this decision. The court then held a best interest hearing and the following evidence was presented.
 {¶ 5} Michael D., who sought to adopt the child, testified that he has known the child's mother, Amy B., for the past four years and lived with her for the last three and one-half years. He believes that he is the only father that the child has known. His family has also incorporated the child into their lives. His parents assist in child care while he and Amy B. work. The child also plays with Michael D.'s younger sister who is five years old. The child refers to him as dad. Since he has been in the child's life, appellant has never sought contact with the child.
 {¶ 6} Several witnesses (including Michael D.'s mother, the father of one of Michael D.'s friends, one of Amy B.'s friends who also knew appellant, and the child's current teacher) testified regarding Michael D. and his relationship with the child. Collectively, they testified that Michael D. has a wonderful relationship with Amy B., that he is responsible, that he takes good care of the child, that he provides a stable home for the child; that the child has been incorporated into his extended family; that he and the child have a good relationship; that the child is happy and doing well in school; and that the child calls Michael D. "daddy."
 {¶ 7} Amy B. testified that the child was born while both she and appellant were still in high school and each of them lived with their parents. For the first year, appellant only saw the child about every other weekend when Amy B. left the child for a couple of hours at the home of appellant and his parents. She did not believe that appellant ever interacted with the child alone. When Amy B. left the child at appellant's home, she would call frequently during the day. She was often told that appellant was not home or would be back shortly. The child had stayed overnight once with the paternal grandmother, but appellant was not home that evening. During the child's second year, appellant's involvement with the child decreased. Appellant never initiated contact with the child. He would care for her only when Amy B. requested help. After Amy B. was graduated from high school and the child was three years old, Amy B. and appellant no longer had a relationship. Appellant's relationship with the child ended as well. He never attempted to contact Amy B. regarding the child. She denied visitation to the paternal grandmother's home only if she had already made plans for the weekend. Appellant never supported the child financially and has never held a job for an extended period of time. Amy B. did not believe that appellant was ever interested in being a dad to the child.
 {¶ 8} Since Amy B. first met Michael D., he has always had a relationship with the child. The three lived together for a number of years. Amy B. and Michael D. were married in July 2003. In September 2003, Michael D. sought to adopt the child. After their marriage, appellant took legal action to obtain visitation with the child, but that action was continued pending the outcome of the adoption petition.
 {¶ 9} Amy B. also testified that Michael D. was charged with domestic violence early in September 2002. During an argument, Michael D. called the police to have Amy B. removed from the premises. She shut herself and Michael D. in the bedroom when the officers arrived. When he tried to leave the bedroom, she fell. The officers thought he had hurt her. She tried to explain, but the officers told her that if she signed a paper, they would take care of everything. Michael D. was charged with domestic violence, but she refused to prosecute the case. The charges were continued for one year, with the prosecutor retaining the right to reactivate the case. Michael D. was required to attend counseling. He has since changed jobs and is under less stress.
 {¶ 10} Jeffrey H. testified that he has known Amy B. for four years and has known appellant for 14 years. He stopped associating with appellant about ten years ago when appellant began using drugs and alcohol. He became friends with Amy B. about six months after the child was born. He would stop by the mother's house almost daily. Occasionally, he would see appellant there watching television.
 {¶ 11} Appellant testified that he had a good relationship with his daughter until she was about five years old. He saw her at least five days a week, or every other day, for the first three or four years of her life. She was happy to see him. Occasionally, he would be alone with her. She would sleep in his room whenever she stayed over night. He would spend more time with the child than did his mother and sister. He took his daughter to the park and to school. He colored with her, taught her how to ride a bike, watched television with her. He always bought her gifts and spent holidays with her. After his relationship with Amy B. ended, he was unable to see his daughter. He tried to call Amy B. and, after she moved out of her mother's home, he called the child's maternal grandmother in order to see his daughter. At the same time, he moved to Adrian, Michigan. His last visit with his daughter occurred in September 2002, when the child's mother brought the child to the paternal grandmother's home and appellant happened to be there. He asked Amy B. to bring the child back again so that he could see her, but Amy B. did not respond. He never asked Amy B. for her new address or telephone number. Appellant's girlfriend also testified that she witnessed the attempts by appellant and the paternal grandmother to see the child. Both would call the maternal grandmother. Appellant also sent cards.
 {¶ 12} Appellant could not explain why he waited so long to enforce his visitation rights. All he wanted now was to ensure that he has a right to visitation with his daughter and have his family continue their relationship with her. While he was employed for a short period of time, he is currently unemployed. He has returned to Woodville, Ohio, to live with his mother. Even though he could not financially support the child or provide her with a stable home, he believes that he can have a positive influence in her life.
 {¶ 13} The paternal grandmother testified that during the child's early years, the child was frequently at the grandmother's home and appellant spent a lot of time with the child. Appellant's sister testified that the child was with appellant almost every day after school for the first two and one-half years. Both appellant's mother and sister testified that appellant took care of the child's needs when she was a baby. The paternal grandmother denied that appellant was gone when the child was there. After appellant's and Amy's relationship ended, appellant was never allowed to see the child. The paternal grandmother could see the child only at Amy B.'s home. Appellant's sister also tried to see the child and was repeatedly told that arrangements would be made, but none were.
 {¶ 14} The maternal grandmother testified that appellant did see the child every day during her early years because he, Amy, and the child were going to school. Appellant would come over to the maternal grandmother's home after school about every other day. At that time appellant and Amy still had a relationship. The next year, Amy was still in school, but appellant was graduated. Appellant came over less often, but still two or three times a week. By the child's fourth year, appellant was no longer visiting because he and Amy no longer had a relationship. In the fall of 2002, the maternal grandmother received six-to-ten calls from the paternal grandmother and appellant's sister about visiting the child, which she passed along to Amy. The maternal grandmother never received a call from appellant.
 {¶ 15} Following the hearing, the court concluded in a judgment dated April 26, 2004, that the adoption is in the best interest of the child. In a judgment dated November 15, 2004, the court granted the adoption. Appellant then sought an appeal to this court.
 {¶ 16} On appeal, appellant argues that the trial court abused its discretion by permitting the adoption in this case when there was evidence presented that appellant and his family had a significant relationship with his daughter from birth until appellant's relationship with Amy B. ended.
 {¶ 17} The primary purpose of the statutorily-created adoption proceeding is not to terminate the rights of the natural parent, but to provide a legal family relationship and home for a child. In re the matterof the Adoption of Lindsey B. (July 13, 2001), 6th Dist. App. No. L-01-1197, citing In re Adoption of Kohorst (June 17, 1992),75 Ohio App.3d 813, 817. Because R.C. 3107.02(A) and (B) and R.C.3107.03 provide who "may" be adopted and who "may" adopt, the Ohio Supreme Court has held that adoption is not an absolute right. The standard for determining whether the probate court should allow the adoption is whether (1) the petitioner is suitably qualified to care for and rear the child, and (2) the adoption is in the best interest of the child. In re Adoption of Charles B. (1990), 50 Ohio St.3d 88, 93, and Inre Adoption of Ridenour (1991), 61 Ohio St.3d 319, 320. Therefore, each case must be determined on its own facts. Charles B., supra, at paragraph three of the syllabus. The probate court's determination is reviewed on appeal under an abuse of discretion standard. Id. at 94. An abuse of discretion "implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Ridenour, supra. The probate court alone weighs the testimony and determines the credibility of the witnesses.Lindsey B., supra, and In re Adoption of Lauren Marie Tucker, 11th Dist. App. No. 2002-T-0154, 2003-Ohio-1212, at ¶ 11, both citing Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23.
 {¶ 18} In making its determination of the best interest of the child to be adopted, R.C. 3107.161(B) provides that the probate court "shall consider all relevant factors including, but not limited to, all of the following:
 {¶ 19} "(1) The least detrimental available alternative for safeguarding the child's growth and development;
 {¶ 20} "(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
 {¶ 21} "(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
 {¶ 22} "(4) The duration of the separation of the child from a parent;
 {¶ 23} "(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
 {¶ 24} "(6) The likelihood of safe reunification with a parent within a reasonable period of time;
 {¶ 25} "(7) The importance of providing permanency, stability, and continuity of relationships for the child;
 {¶ 26} "(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 27} "(9) The child's adjustment to the child's current home, school, and community;
 {¶ 28} "(10) The mental and physical health of all persons involved in the situation;
 {¶ 29} "(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense."
 {¶ 30} In this case, the probate court did not indicate in its judgment its basis for finding that granting the adoption would be in the child's best interest. Furthermore, the probate court did not even indicate that it considered the factors of R.C. 3107.161. The probate court does not have to enumerate the factors set forth in R.C. 3107.161.In the Matter of the Adoption of Lauren Marie Tucker, at ¶ 14, and Inthe Matter of Jones (Nov. 15, 1999), 5th Dist. App. Nos. 99-CA-65, 99-CA-66, 99-CA-67, 99-CA-68, and 99-CA-69, at 20. However, we hold that the record must clearly indicate that the court did consider these factors. In the Matter of the Adoption of Jewels Marie Haylett, 11th Dist. App. No. 2003-P-0093 and 2003-P-0103, 2004-Ohio-2306, at ¶ 43-44.
 {¶ 31} Interestingly in this case, the trial court found in its March 4, 2004 judgment regarding appellant's consent to the adoption, that there was conflicting testimony regarding appellant's involvement in the child's life. Therefore, the court could not conclude that there was clear and convincing evidence the appellant failed to communicate with the child during the prior year. However, because appellant had failed to support the child for the prior year, the court held that his consent to the adoption was unnecessary.
 {¶ 32} We also note in the record that the assessor who completed the adoption assessment report did not even include any information regarding appellant. She indicated only that Amy B. would provide information regarding appellant as needed. Yet, the assessor proceeded to recommend the adoption with no indication that she received further information regarding appellant. Furthermore, the assessor never testified at trial. See Lauren Marie Tucker, supra, at ¶ 17.
 {¶ 33} While the probate court's decision to permit the adoption in this case may be justified, we find that we are unable to review the probate court's decision when it failed to indicate that it considered the statutory factors and when it failed to include any rationale justifying its decision that the adoption would be in the child's best interest. Appellant's first assignment of error is found well-taken.
 {¶ 34} In his second assignment of error, appellant argues that his counsel rendered ineffective assistance by failing to correct the probate court when it placed the burden of proof on the issue of the child's best interest on Michael D., as petitioner, rather than on appellant, as the party who opposed the adoption as required by R.C. 3107.161(C). As a result, appellant argues, the court placed the burden on appellant to show justification for his failures as a parent.
 {¶ 35} Ineffective assistance of counsel is established by proof that (1) there was a substantial violation of the attorney's duty to his client, and (2) prejudiced resulted from the attorney's actions or breach of duty in that there is a reasonable probability of a different result in the case. Strickland v. Washington (1984), 466 U.S. 668, 687-689, and State v. Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 36} R.C. 3107.161(C) provides that:
 {¶ 37} "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative."
 {¶ 38} This statute places the burden of production of evidence relating to the child's best interest upon the party opposing the petition for adoption. The statute also shifts the burden of proof with respect to the best interest determination only with regard to one of the statutory factors, namely, R.C. 3107.161(B)(1). That factor is that the adoption would be "[t]he least detrimental available alternative for safeguarding the child's growth and development." Id. The petitioner retains the burden of proving that adoption is in the best interest of the child.
 {¶ 39} Upon a review of the transcript, we find that the trial court properly stated the burdens in this case. Therefore, appellant has failed to establish that his counsel violated any duty owed to him. Appellant's second assignment of error is not well-taken.
 {¶ 40} Having found that the trial court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Lucas County Court of Common Pleas, Probate Division, is reversed. This case is remanded to the probate court to enter a judgment consistent with this decision and judgment entry. Pursuant to App.R. 24(B), appellee is hereby ordered to pay the court costs incurred on appeal.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J. Concur.