[Cite as *In re Petition for Adoption of M.R.M.*, 2017-Ohio-7710.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE PETITION FOR ADOPTION OF: | ) ) ) | CASE NO. 17 MA 0088 |
| M.R.M., A MINOR. | ) ) ) ) | OPINION |

CHARACTER OF PROCEEDINGS: Domestic Relations Appeal from the Court of Common Pleas Probate Division of Mahoning County, Ohio Case No. 2016 AD 0029

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellant: Atty. Patrick K. Wilson
Harrington, Hoppe & Mitchell, LTD.
108 Main Avenue, S.W., Suite 500
Warren, Ohio 44481

For Defendant-Appellee: Atty. John P. Lutseck
762 Youngstown Kingsville Road
P.O. Box 49
Vienna, Ohio 44473

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: September 15, 2017

ROBB, P.J.

{¶1} Petitioner-Appellant Stepdad appeals the decision of Mahoning County Probate Court denying his petition to adopt M.R.M., his stepchild. Three issues are raised in this appeal. The first issue is whether the probate court failed to consider the factors set forth in R.C. 3107.161(B) in determining the best interest of the child. The second issue is whether the trial court's denial of the adoption petition is against the manifest weight of the evidence. The third issue is whether Respondent-Appellee Birth Dad presented material evidence in accordance with R.C. 3107.161(C) that it was in the child's best interest for the petition to be denied.

{¶2} For the reasons expressed below, the issues have no merit and the probate court's decision is affirmed.

Statement of the Case

{¶3} Birth Dad and Mother are the biological parents of the child. They had a brief relationship, were never married, and did not live together. Paternity, visitation, and support were established when the child was an infant.

{¶4} When the child was approximately 3 years old, Mother and Stepdad began dating. Mother and the child moved in with Stepdad when the child was approximately 5 years old. In July 2015, when the child was 6, Mother and Stepdad married.

{¶5} It is undisputed Stepdad has been a constant in the child's life and the child refers to Stepdad as "daddy."

{¶6} Birth Dad did have ordered visitation with the child. It appears he had supervised visitation twice a week for two hours each visit. The record indicates visitation was sporadic. However, Mother and Birth Dad stated it was sporadic for different reasons; Mother indicated Birth Dad did not exercise his visitation regularly, while Birth Dad indicated Mother did not always let him exercise visitation. Both parties agreed visitation stopped in October 2015.

{¶7} In September 2016, Stepdad filed a R.C. 3107.05 adoption petition. The petition indicated Birth Dad's consent to adopt was not needed because Birth

Dad failed, without justifiable cause, to provide maintenance and support for the child for a period of at least one year prior to the filing of the petition. 9/23/16 Petition.

{¶8} A consent hearing was set; Birth Dad received notice of the hearing. At the consent hearing, Birth Dad admitted he did not pay child support for the one year period. However, he asserted he had justifiable cause as to why he was unable to pay support. After hearing the evidence, the court found he did not have justifiable cause and held his consent was not needed for the adoption. The probate court then set the matter for a best interest hearing. 2/23/17 J.E.

{¶9} At the best interest hearing, an adoption assessor, Mother, Stepdad, and Birth Dad testified. The probate court talked with the child, in camera.

{¶10} The court found it was not in the best interest of the child to grant the petition. It stated it had no concerns about Stepdad; "Petitioner cares and loves the child as his own." 5/2/17 J.E. However, the court determined it was not in the child's best interest to sever the relationship with Birth Dad. 5/2/17 J.E.

{¶11} Stepdad appeals the probate court's decision raising three assignments of error.

First Assignment of Error

"The probate court erred by failing to consider R.C. § 3106.161(B) [sic] when determining the best interest of M.R.M. during the contested adoption."

{¶12} R.C. 3107.161(B) lists factors a court must consider when determining the best interest of a child in a contested adoption case. R.C. 3107.161(B) ("shall consider all relevant factors, including").

{¶13} Stepdad argues the probate court's judgment entry does not refer to R.C. 3107.161(B), list any of the factors, and does not discuss any factor with specificity. Accordingly, Stepdad asserts the denial of the adoption petition must be reversed and remanded back to the probate court with instructions for it to consider the R.C. 3107.161(B) factors in rendering its decision.

{¶14} Birth Dad counters arguing the record indicates the probate court considered the factors.

{¶15} Appellate courts have held a trial court is not required to list each factor enumerated in R.C. 3107.161. *In re Adoption of Brianna Marie D.*, 6th Dist. No. L-04-1367, 2005-Ohio-797, ¶ 30; *In re Adoption of Haylett,* 11th Dist. Nos. 2003-P-0093, 2003-P-0103, 2004-Ohio-2306, ¶ 43; *In re adoption of Tucker*, 11th Dist. No. 2002-T-0154, 2003-Ohio-1212, ¶ 14; *In re Jones*, 5th Dist. Nos. 99-CA-65, 99-CA-66, 99-CA-67, 99-CA-68, 99-CA-69, 1999 WL 1071746 (Nov. 15, 1999). Failing to list the factors does not indicate the statutory factors were not considered. *Tucker*, citing *In re Adoption of Congrove*, 9th Dist. No. 98CA007065 (Feb. 24, 1999). However, in order for a judgment to be upheld the record must clearly indicate the probate court considered the factors. *In re Adoption of Brianna Marie D.; In re Adoption of Haylett* at ¶ 43-44.

{¶16} In reviewing the above cases, it appears if a probate court's decision does not explicitly state the R.C. 3107.161(B) factors were considered and does not include rationale justification for the decision, then the best interest decision should be reversed and the matter remanded for consideration of the factors and for the court to provide explanation. For instance, in *Haylett*, the court explained:

> Since the trial court did not indicate that it considered the factors contained in R.C. 3107.161(B) or adequately state the basis of its decision, this court is unable to review the trial court's best-interests determination. Therefore, we are reversing the trial court's judgment granting the adoption. This matter is remanded to the trial court. On remand, the trial court is instructed to sufficiently indicate that it considered all the factors in R.C. 3107.161(B) and provide sufficient explanation of the application of those factors to the facts of this case. This will allow for meaningful appellate review.

*Haylett* at ¶ 44.

In the concurring opinion, Judge Grendell further explained:

> Unfortunately, in this case, there is a paucity of findings in the record supporting what otherwise appears to be a logical decision on the best

interest issue. The only finding in the lower court's judgment entry supporting its decision is that Jewels was "loved and respected" by the families. While the trial court is not required to list its analysis of the statutory factors under R.C. 3107.161(B), *Tucker*, 2003–Ohio–1212, at ¶¶ 13–14, I concur with the majority's determination that the trial court, at a minimum, must adequately indicate in the record sufficient findings to support its best interest decision in an adoption case to allow the appellate court the opportunity to ensure that such ruling is not unreasonable, arbitrary, or unconscionable. The lack of such findings in the record of the lower court's best interest hearing and the judgment entry preclude such review at this time. Therefore, I concur with the decision to reverse and remand for additional proceedings by the court below.

*Id.* at ¶ 52 (J.Grendell concurring).

{¶17} Similarly, in *In re Adoption of Brianna Marie D.*, the Fifth Appellate District stated it was unable to review the probate court's decision because the probate court failed to indicate it considered the statutory factors, and it failed to include any rationale justifying its decision that the adoption would be in the child's best interest. *In re Adoption of Brianna Marie D.*, 2005-Ohio-797 at ¶ 33.

{¶18} However, when a probate court states it considered the applicable statutory factors and the record contains evidence of some of the factors that is sufficient to demonstrate consideration of R.C. 3107.161(B):

At the hearing, the trial court stated it considered the applicable statutory factors. There was evidence before the court regarding the child's age, her wishes, the length of the separation between appellant and Lauren, the stability of her current placement with her mother and step-father, the importance of stability for the child, her interaction with her family, and her current adjustment. The trial court discussed the sexual abuse charges and its view that appellant's continued denial of

> responsibility for those acts was troubling. This statement reflects that the likelihood of a safe reunification with appellant is doubtful. Lauren consistently has expressed her wish to terminate any relationship with appellant and to be adopted by Tucker.

*In re Adoption of Tucker*, 2003-Ohio-1212 at ¶ 13.

{¶19} Furthermore, even when there is no reference at all to the R.C. 3107.161(B) factors, but the record indicates there was consideration of the factors because of the evidence submitted that is sufficient to show consideration of R.C. 3107.161(B):

> We further find that, although the trial court did not specifically enumerate the factors set forth in R.C. 3107.161(B) in its decision, it clearly did consider such factors in making its decision. At the hearing, competent, credible evidence was presented that appellant, who has no criminal convictions, exercised poor judgment in regard to both her own children and her grandchildren.

*In re Jones*, 5th Dist. No. 99-CA-65.

{¶20} In the matter at hand, R.C. 3107.161(B) is not referenced in the judgment entry or at the best interest hearing. In the judgment entry, the probate court did reference R.C. 3107.14(C), which indicates after the court determines the consent issue, i.e., whether it was obtained and/or excused, the court must then determine if adoption is in the best interest of the child. That statute does not reference R.C. 3107.161(B). Therefore, reference to R.C. 3107.14(C) is not an implicit reference to R.C. 3107.161(B).

{¶21} However, it can be gleaned from the record that the probate court did consider the R.C. 3107.161(B) factors. This court can determine from the judgment entry, the evidence presented at the best interest hearing, and the questions asked by the court at the best interest hearing that the relevant R.C. 3107.161(B) factors were considered.

**{¶22}** R.C. 3107.161(B) provides a non-exclusive list of factors to consider in determining the best interest of a child in a contested adoption. Those factors are:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.

R.C. 3107.161(B)(1)-(11).

**{¶23}** The first factor is the "least detrimental alternative" factor. Section (A) defines this to mean, "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A). The probate court considered this factor in its judgment entry when it stated:

Upon taking all the evidence into consideration and based upon the fact that no matter what decision this Court makes that there are three (3) individuals that still love and care for this child, it is the decision of this Court that this Adoption is not in the best interest of this child. Removing the birth father from this child's life would deprive the child her ability to know her birth father and have a relationship with him in the future.

5/2/17 J.E.

**{¶24}** Denying the adoption means Birth Dad can still have a relationship with the child. It keeps three individuals acting as parents in the child's life, instead of two.

It also keeps the status quo, per se. During the court's questioning of Birth Dad, the court asked what the best case scenario he saw for his child. His response was for the child to live with Mother and Stepdad, and for him to have visitation. Tr. 91-93. He understands the child spends a lot of time with Mother and Stepdad, and he has no objection to their relationship. Tr. 91. He thinks the best situation would be to have all three of them in her life. Tr. 91-93.

**{¶25}** His testimony addresses factors 5, 6, and 7, which are reunification with a parent, and stable and permanent family relationships for the child. Birth Dad testified although he has not seen the child since October 2015, he has attempted visitation. He asserted due to his relationship with Mother, he has been unable to exercise visitation. Birth Dad accepted part of the blame for the strained relationship with Mother. He also testified that prior to this action being filed, he filed an action in Trumbull County to enforce visitation. During the probate court's questioning of Birth Dad as to the best case scenario for the child, Birth Dad was very realistic. He explained he is not asking for anything "earth shattering"; if he got what he wanted it would be visitation two weekends a month. Tr. 91. He stated he knew the child would live with Stepdad and Mother and he did not object; he has no problem with Stepdad and the relationship he has with the child. Tr. 91. Birth Dad stated he knew weekend visitation would not happen right away because he has not seen the child in a while. Tr. 93. He was aware there would be a reintroduction process so the child knows she is among people who love her. Tr. 93. This testimony addressed reunification and maintaining stable family relations.

**{¶26}** Factors 2, 3, and 9 focus on the child's age, health, wishes, and adjustment to home and school. Mother and Stepdad testified the child was doing well in school. The testimony also indicated the child was almost 8 years old when the hearing was held. The probate court spoke with the child in camera and during that conversation all of these factors were either asked or observed. In the judgment entry, the probate court indicated having Birth Dad, Stepdad, and Mother in the child's life will help her develop, not harm her. 5/2/17 J.E. This indicates the probate court considered the child's adjustment to her environment and her mental health.

**{¶27}** Factor 4 is the duration of separation from the parent. The testimony clearly established Birth Dad had not seen the child since October 2015. The probate court noted the separation in the judgment entry, but indicated the lack of contact was not solely the fault of Birth Dad but was also caused by the strained relationship with Mother. 5/2/17 J.E.

**{¶28}** Factor 8 is the child's interaction and interrelationship with parents and others who may significantly affect the child's best interest. Stepdad, Birth Dad, and Mother qualified as such individuals, all of them testified, and all were questioned by the court. Mother and Stepdad each described Stepdad's interaction with the child. He is very active in the child's extracurricular activities, including dance, softball, and cheerleading. They have gone on family vacations, including a recent trip to Disney World. The testimony clearly indicates Stepdad has stepped into the role of father and he has a very loving relationship with the child. The court noted this when it stated, "the Court understands and appreciates the Petitioner's [Stepdad's] role in the child's life and commends the Petitioner for the excellent job he has been doing by providing a stable home for the minor * * *." 5/2/17 J.E.

**{¶29}** Birth Dad also described his interaction with the child when he had visitation. He explained he played with her and did her preschool homework with her. Tr. 67. He stated that he had taken her on vacation. Tr. 93.

**{¶30}** In its decision, the probate court stated "having three (3) people in this child's life will not hurt this child but will help her develop into a well-rounded mature individual with all their cooperation and guidance." 5/2/17 J.E. That statement indicates the probate court considered her interaction with Stepdad, Mother, and Birth Dad.

**{¶31}** Factor 10 is the mental and physical health of all persons involved. All persons involved testified. Therefore, visible health issues would have been observed. As part of the adoption process, an assessor was appointed. During the assessment, Stepdad and the child had physicals. No health issues were reported. As to Birth Dad, there were no questions about his physical or mental health.

**{¶32}** Factor 11 is criminal history of any person involved. A background check on Stepdad was completed during the assessment process. During the hearing, no questions were asked about Birth Dad's criminal history.

**{¶33}** In addition to the 11 factors, the probate court can consider any other relevant factor. R.C. 3107.161(B) (Factors include, but are not limited to, those listed in section (B).). Part of the probate court's reasoning is based on other relevant factors, such as Birth Dad putting the child's best interests before his own. The probate court explained:

> There was further testimony provided that the birth father has not had any contact with the minor after October 28, 2015. However, after hearing testimony from all the witnesses, the Court finds that the lack of contact was not solely the fault of the birth father, * * *, but as a result of the poor relationship between he and the birth mother. Testimony was provided that the relationship between the birth mother and the birth father has always been strained but that somewhat normal visitations were occurring prior to September 28, 2015. The Court was moved by the testimony of the birth father that while still not receiving cooperation from the birth mother regarding his regular visitations, he still believed that it was in the best interest of the child to not proceed with legally enforcing visitations and went along with what visitations the birth mother allowed him to have. Further, the Court was impressed with the testimony of the birth father that when approached by the birth mother regarding her marriage to the Petitioner [Stepdad] in Mexico and the need of the birth father to sign a consent to take the child out of the country for said ceremony that the birth father still gave his consent knowing that would be in the child's best interest and did not request anything in exchange for his consent. This proved to the Court that the birthfather demonstrated that he was acting in the best interest of his child and not his own interest.

8/2/17 J.E.

**{¶34}** The record before us shows active involvement in the questioning of witnesses by the probate court; after the direct and cross examination the probate court asked its own questions. Furthermore, the probate court interviewed the child in camera. During the court's questioning evidence of some of the factors in R.C. 3107.161(B) was brought to light. Thus, the record supports the conclusion that the probate court considered the relevant R.C. 3107.161(B) stated factors and other relevant factors. Therefore, this assignment of error does not have merit.

Second Assignment of Error

"The probate court erred in denying Appellant's petition for adoption and its denial was against the manifest weight of the evidence."

"The right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law. * * * Adoption terminates those fundamental rights." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986).

**{¶35}** The decision to grant or deny an adoption petition is fact specific. *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 94, 552 N.E.2d 884 (1990). Accordingly, trial courts have "broad discretion" to determine whether an adoption petition should be granted or denied. *Id.*

**{¶36}** We review a probate court's decision to grant or deny an adoption petition under an abuse of discretion standard. *In Re Adoption of Ridenour*, 61 Ohio St.3d 319, 320, 574 N.E.2d 1055 (1991). An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶37}** As stated above, R.C. 3107.161(B) provides a non-exclusive list of factors to consider in a contested adoption. Stepdad argues when the factors are considered, it is clear the probate court abused its discretion in denying the adoption petition. He supports his position by asserting nine points that correspond with the factors.

{¶38} First, he contends the adoption assessor concluded it was in the child's best interest for the petition to be granted. This is an accurate reflection of the testimony; the seasoned adoption assessor opined it was in the best interest of the child for Stepdad to adopt her. Tr. 10. However, she did admit she did not talk to Birth Dad during the assessment. Tr. 12.

{¶39} Second, Stepdad has been the child's father figure the majority of her life. This is also an accurate reflection of the testimony. It is clear Stepdad has taken on a father role with the child. He is actively involved in her extracurricular activities and the child calls him "daddy." Tr. 20-21, 51. That said, both party's admitted the child knows Birth Dad is also her dad and she understand that she has two dads.

{¶40} Third, the child wants to be adopted by Stepdad. According to Stepdad and Mother, the child indicated she wants the same last name as Mother and Stepdad. Tr. 25. The court conducted an in camera interview with the child to determine the child's wishes.

{¶41} Fourth, Birth Dad has had no contact with the child for two years. This is an accurate reflection of the facts. However, as explained above, the probate court found the situation was not attributable solely to Birth Dad. Rather, the strained relationship with Mother contributed to the situation. The record supports the probate court's conclusion. The testimony indicated Birth Dad sought to enforce visitation, and was in and out of court since the child was born. Tr. 65. The court noted, that in some instances, rather than seeking to legally enforce the visitation, Birth Dad took what he was given because he did not want to subject the child to any more court proceedings. Tr. 75; 5/2/17 J.E.

{¶42} The fifth, sixth and seventh points are interrelated and based on Birth Dad's lack of contact with the child for two years. The fifth assertion is that granting the adoption will give the child a more stable and permanent family. The sixth assertion is that Birth Dad did not attempt to reunify with the child. The seventh assertion is the adoption will provide permanency and continuity of relationships for the child. As stated above, the lack of contact was not solely Birth Dad's fault. There is evidence Birth Dad brought an action in Trumbull County to enforce his visitation

shortly before the adoption action was filed. Furthermore, as the probate court indicated, having three parental figures in the child's life will not harm, but will help her to develop into a well-rounded mature individual. 5/2/17 J.E.

**{¶43}** Eighth, Stepdad asserts the child views him as her father and has no desire to see Birth Dad. Stepdad states the child is scared of Birth Dad. The testimony does support the conclusion the child views Stepdad as her father. Tr. 20-21, 51. However, the evidence also indicates the child also knows Birth Dad is her birth father and understands what that means. Tr. 21, 49. As to being scared of Birth Dad, although mother testified the child was scared of Birth Dad, Stepdad insinuated it is not fear of Birth Dad, but rather the child had no desire to see Birth Dad. Tr. 58.

**{¶44}** Lastly, Stepdad argues the child is fully adjusted to her life with Mother and Stepdad, and nothing in the record suggests she is adjusted in any way to Birth Dad or his residence. This argument is based on the lack of contact. As stated above, the probate court found the lack of contact was not solely Birth Dad's fault.

**{¶45}** Stepdad admits the R.C. 3107.161(B) factors are not an exclusive list; the probate court is permitted to consider any other relevant factor. In this instance, the probate court also considered Birth Dad's actions which showed he put the child's best interests before his own. The court indicated this was displayed by readily agreeing to sign the document so the child could go to Mexico for Stepdad and Mother's wedding without asking for anything in return and by accepting what visitation he got instead of constantly going back to court. The court indicated it was moved by this testimony. 5/2/17 J.E.

**{¶46}** Birth Dad's testimony is replete with examples of how he puts the child's best interest before his own. He testified the best situation for his child is to live with Mother and Stepdad, and for him to have regular visitation. Tr. 91-92. He acknowledged Stepdad has been a constant in the child's life, she calls him dad, and Birth Dad knows the child is in capable hands when she is with Stepdad. Tr. 68, 72, 91. His testimony indicated he does not have any issues with Stepdad being a large part of the child's life. Tr. 91. Birth Dad acknowledged he has not seen the child in a while and that it is not the child's fault, but rather something for the adults to fix. Tr.

91. He admitted he and Mother do not get along and that is partly his fault. Tr. 72. He stated he never talked bad about Mother or Stepdad, and they all put on a good "face" in front of the child. Tr. 72, 92.

{¶47} The probate court also considered the fact that Birth Dad wants to be a part of the child's life and that it takes a village to raise a child. Nothing in the record indicates Birth Dad has physically harmed the child. His visitation was sporadic, but according to him he took what he could get so that the parties could get along. The probate court believed him and as it is in the best position to determine credibility we will not second guess that decision. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). It is noted that sometimes a parent will choose this route rather than to have constant court hearings and disagreements. These constant hearings and disagreements not only wear on the parents, but impacts the child. While Birth Dad should have made other attempts at contact, such as letters, calls, and gifts, his action filed in Trumbull County and his testimony, in this case, indicate he loves the child and wants to be a part of her life. The more people a child has in its life to support and encourage the child, the better. As the probate court stated, "the Court cannot overlook the fact that having three (3) people in this child's life will not hurt this child but will help her develop into a well-rounded mature individual with all their cooperation and guidance." 5/2/17 J.E. Severing the parental bond in this situation would take away the ability of the child to know the Birth Dad and have a relationship with him. That said, hopefully, Birth Dad is able to exercise regular visitation and becomes a present and dependable parent for the child so she can know and have a relationship with him.

{¶48} Considering testimony, the in camera interview, and the probate court's broad discretion, we conclude the probate court did not abuse its discretion in denying the petition for adoption. This assignment of error is meritless.

<u>Third Assignment of Error</u>

"The probate court erred by ignoring the lack of any material evidence put forth by the contesting party as required by R.C. § 3107.161(C) regarding the best interest

determination and that M.R.M.'s current placement is not the least detrimental available alternative."

**{¶49}** Stepdad argues Birth Dad failed in his burden to comply with R.C. 3107.161(C). That provision states:

> A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative.

R.C. 3107.161(C).

**{¶50}** The Twelfth Appellate District has explained this section means the person contesting the adoption bears the burden of providing "material evidence" for the best interest determination and the burden of establishing "the child's current placement is not the least detrimental available alternative." *In re Adoption of A.M.L.,* 12th Dist. No. CA2015-01-004, 2015-Ohio-2224, ¶ 10, quoting R.C. 3107.161(C). That said, the petitioner retains the burden of proving adoption is in the best interest of the child. *Id.*

**{¶51}** Stepdad contends Birth Dad failed on both accounts; Birth Dad failed to produce material evidence and failed to establish the "least detrimental alternative."

**{¶52}** The record discloses Birth Dad testified it was not in the best interest of the child to be adopted. He stated it was in the child's best interest for the status quo to be maintained; it was best for the child to continue living with Mother and Stepdad, and for him to have regular visitation. His testimony indicated it was best if the child knew him and had a relationship with him. He indicated the child knows he is her birth father and he has had visitation in the past. He stated it was best for the child if he, Stepdad, and Mother were all in the child's life. As aforementioned, Birth Dad testified about his sporadic visitation with the child and why he chose not to enforce visitation through court orders at times. The probate court believed his testimony. His testimony can be considered material evidence as to the best interest of the child. Thus, he did produce evidence.

**{¶53}** As to the "least detrimental alternative," the statute does state Birth Dad must establish that the child's current placement is not the least detrimental available alternative. R.C. 3107.161(C). Section (A) defines least detrimental alternative as, "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A).

**{¶54}** Birth Dad testified the child living with Mother and Stepdad, and Birth Dad having regular visitation was the best case scenario. Tr. 91-93. He indicated when parents do not stay together, step-parents become part of the child's life. Tr. 91-93. He acknowledged Stepdad was capable, and Birth Dad knew Stepdad was a father figure to the child. Birth Dad did not have any problems with their relationship and accepted it as a reality. Tr. 91-93. That situation is the status quo; Birth Dad has court ordered visitation, even though it was not exercised regularly. Thus, Birth Dad's testimony established the "least detrimental alternative," i.e., the situation that would have the least long-term negative impact on the child.

**{¶55}** Accordingly, for those reasons, this assignment of error is meritless.

## Conclusion

**{¶56}** For the above stated reasons, the assignments of error lack merit. Accordingly, the probate court's decision is affirmed.


Waite, J., concurs.

DeGenaro, J., concurs.