[Cite as *In re Adoption of A.R.A.*, 2024-Ohio-435.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

IN THE MATTER OF:

A.R.A.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CA 0971**

---

Civil Appeal from the
Court of Common Pleas, Probate Division, of Carroll County, Ohio
Case No. 20225010

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Herbert J. Morello*, Morello Law Offices Ltd., for Appellee and

*Atty. Nathan D. Boone*, Boone Law LLC, for Appellant.

Dated: February 6, 2024

**HANNI, J.**

{¶1} Appellant, Father, appeals from a Carroll County Probate Division Court judgment determining that it was in the best interest of his daughter, A.R.A., that Appellee, Maternal Grandmother, be permitted to adopt her.

{¶2} This matter was just recently before this Court on Appellant's appeal from the trial court's judgment determining that his consent was not required for A.R.A.'s adoption. *See Matter of Adoption of A.R.A.*, 7th Dist. Carroll No. 23 CA 0969, 2023-Ohio-3606. We take the facts and procedural history from that case at paragraphs two through nine and adopt them herein as paragraphs incorporated as follows:

{¶3} Appellant and the natural mother (Mother), who is now deceased, had a child together, A.R.A., on September 8, 2018. Appellant and Mother were unmarried but had been living together for a short period of time. When the child was three months old, Mother and Appellee obtained a protection order against Appellant after several instances of physical violence, including one incident where Appellant assaulted Mother while she was holding A.R.A. Mother obtained the protection order on January 7, 2019, and it provided: "ALL TERMS OF THIS ORDER SHALL REMAIN IN EFFECT FOR A PERIOD OF FIVE YEARS FROM ISSUANCE, OR UNTIL 1/7/2024 unless earlier modified or terminated by order of this Court." (Ex. A). The order noted that Appellant had several serious felony convictions and may have possession of a hidden weapon despite his weapons disability. The order protected Mother, A.R.A., Appellee, and Mother's older child, who is not involved in the instant proceeding. Appellant has not seen A.R.A. since the protective order was filed.

{¶4} Mother died when A.R.A. was 20 months old. After Mother died, Appellee was named legal guardian of A.R.A. This was almost two years after the protection order was filed. The custody arrangement resulted from Appellee's motion seeking to establish paternity and custody. During those proceedings, the parties agreed that Appellant could be considered for visitation with A.R.A. if he could produce a seven-panel toenail negative drug test to be conducted at Arcpoint Labs of Cuyahoga Falls. (10/10/21 J.E.) If he could

pass a single test, the court agreed to revisit the issue of supervised visitation with the apparent goal of allowing future custody.

{¶5} Appellant took seven drug tests during the allocated time period, and these results were admitted into evidence. Each of these tests were positive for one or more of the following drugs: cocaine, THC, Norcocaine, and Benzodiazepines. Appellant took some of these tests at facilities other than the specific lab ordered by the court because he thought employees of the agreed lab had somehow conspired against him. He also took some of the tests by submitting a urine sample, which was not a method approved by the court.

{¶6} On December 16, 2022, Appellee filed a petition of adoption. She asserted that Appellant's consent was not required, as he had no more than *de minimus* contact with the child in the year preceding the petition. The petition was filed more than a year after the custody agreement was filed. Appellant filed a handwritten response to the court on February 28, 2022, contesting the adoption.

{¶7} On May 30, 2023, the court held a hearing addressing, first, whether Appellant had timely objected to the adoption and, second, whether he had more than *de minimis* contact with the child during the preceding year. The court found that while Appellant could have filed his objection sooner, because permanent loss of custody is the functional equivalent of the death penalty it would accept his objection.

{¶8} At the hearing to determine whether Appellant's consent was necessary, both parties presented evidence in the form of physical documents and witness testimony. Although Appellant argued the protection order prevented him from contacting or visiting the child during the relevant time period, evidence was introduced that the protection order specifically provided it could be modified or terminated prior to the expiration date pursuant to a court order.

{¶9} On June 15, 2023, the court determined, based largely on Appellant's own testimony, that his consent to adoption was not required because he had less than *de minimis* contact with the child without justifiable cause. Regarding the protection order, the court cited to the order itself, which contained language that it could be modified or

terminated prior to the expiration date. The court also cited Appellant's testimony conceding that he knew about this language, but took no steps to modify or terminate the order. As to the prior custody case, the court relied on the fact that Appellant knew he was required to pass only a single drug test to obtain visitation with the child, and yet he could not produce even one negative test. The court attributed fault to Appellant for failing to refrain from drug use in order to obtain visitation, noting that Appellee took no intentional actions to bar Appellant's visitation. Appellant appealed the court's determination that his consent to adopt was not necessary.

**{¶10}** On appeal, this Court determined there was no evidence aside from a single custody agreement (with which Appellant made no real attempt to comply) to demonstrate justifiable cause to excuse Appellant's failure to have even *de minimis* contact with the child. *Id.* at ¶ 23. Thus, we affirmed the trial court's judgment.

**{¶11}** The probate court subsequently held the final adoption hearing on October 25, 2023. The court determined that it was in the child's best interest to grant the adoption. Thus, it granted Appellee's motion to adopt the child. Appellant filed a timely notice of appeal on November 21, 2023.

**{¶12}** Appellant now raises a single assignment of error, which states:

> THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLEE'S ADOPTION OF A.R.A. WAS IN THE MINOR CHILD'S BEST INTEREST AS THE COURT DID NOT EXPLICITLY APPLY THE BEST INTEREST FACTORS WHERE THE RECORD DOES NOT DEMONSTRATE A CLEAR APPLICATION OF THE STANDARDS.

**{¶13}** Appellant argues the trial court abused its discretion in finding that the adoption was in A.R.A.'s best interest. He contends there was very little evidence presented going to the statutory best interest factors on which the trial court could base its decision. He also points out that the trial court's judgment entry does not mention any specific factors or reasons for why the court concluded the adoption was in A.R.A.'s best interest nor does it mention the best interest factors at all.

Case No. 23 CA 0971

**{¶14}** Appellant goes on to argue that the trial court referred to an assessor's report. Yet he asserts it is impossible from the record to discern if the assessor ever contacted him. And he claims he was not given a chance to challenge any of the assessor's recommendations because the assessor did not testify.

**{¶15}** Moreover, Appellant argues it appears the trial court did not consider several relevant factors such as the lack of contact A.R.A. had with any other family members; the allegation that the babysitters had custody of A.R.A. leading up to the adoption; Appellee's ability to keep up with a five-year-old given her age of 71; and that Appellee has kept A.R.A. from knowing her father.

**{¶16}** "Before granting an adoption, the trial court must hear evidence as to whether first, 'the required consents have been obtained or excused' and second, whether 'the adoption is in the best interest of the person sought to be adopted.'" *In re Adoption of Walters*, 112 Ohio St.3d 315, 2007-Ohio-7, 859 N.E.2d 545, ¶ 5, quoting R.C. 3107.14(C).

**{¶17}** Pursuant to R.C. 3107.14(C), at the final adoption hearing the court is to determine whether all consents have been obtained or excused, and to determine whether the adoption is in the best interests of the child: "If, at the conclusion of the hearing, the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted as supported by the evidence, it may issue * * * a final decree of adoption or an interlocutory order of adoption * * *."

**{¶18}** In this case, the trial court has already determined, and we have upheld the judgment, that Appellant's consent is not required pursuant to R.C. 3107.07(A) due to lack of contact. Thus, this appeal deals only with the trial court's finding that the adoption is in the child's best interest.

**{¶19}** Adoption matters are decided on a case-by-case basis through the exercise of the probate court's discretion. *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 90, 552 N.E.2d 884 (1990). Thus, an appellate court reviews the probate court's decision to determine if the court abused its discretion. Abuse of discretion implies the trial court's

attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶20} R.C. 3107.161(B) lists the factors a court is to consider in a contested adoption concerning the best interest of a child:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been * * * [involved with a case where a child was abused or neglected, or a domestic violence case].

**{¶21}** Moreover, R.C. 3107.161(C) provides: "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." Thus, the burden was on Appellant to provide the court with evidence to establish the child's placement with Appellee is not the least detrimental available alternative. "The least detrimental available alternative" is the alternative that would have the least long-term negative impact on the child. R.C. 3107.161(A).

**{¶22}** In this case, at the conclusion of the hearing, the probate court stated that it read an assessment/home study by a "Ms. Emerick" and noted that the adoption assessor recommended the adoption. However, there is no further information on the record as to the contents of this assessment. The court then stated that "based on the testimony" it was finding that the adoption was in the child's best interest. Likewise, in its judgment entry, the probate court did not make any specific best interest findings, simply finding that "the adoption is in the best interest of the minor being adopted[.]"

**{¶23}** The probate court is not required to list each factor set out in R.C. 3107.161(B). *Matter of Adoption of M.R.M.*, 7th Dist. Mahoning No. 17 MA 0088, 2017-Ohio-7710, ¶ 15. But in order for a judgment to be upheld, the record must clearly indicate the probate court considered the statutory factors. *Id.*

**{¶24}** The court does not specifically state that it considered the statutory best interest factors. But there was evidence presented at the hearing going to almost all of the statutory best interest factors.

**{¶25}** The first factor addresses the least detrimental available alternative for safeguarding the child's growth and development. Appellee is A.R.A.'s maternal grandmother. A.R.A. has lived with Appellee since she was three months old. (Tr. 20). A.R.A.'s mother left when the child was eight months old and then her mother passed

away a year later when the child was 20 months old.  (Tr. 21).  So Appellee has practically always fulfilled the "mother" role for the child.  (Tr. 22).

**{¶26}** The second factor is the age and health of the child.  At the time of the hearing, A.R.A. was five years old. (Tr. 18).  She will start kindergarten this fall. (Tr. 19).  There was no testimony as to the child's health.

**{¶27}** The third factor is the wishes of the child in any case in which the child's age and maturity makes this feasible.  There was no testimony as to A.R.A.'s wishes, presumably due to her young age.

**{¶28}** The fourth factor is the duration of the separation of the child from a parent.  As noted above, A.R.A. has lived with Appellee since she was three months old.  (Tr. 20).  A.R.A.'s mother left when she was eight months old and then passed away a year later.  (Tr. 21).

**{¶29}** The fifth factor is whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements.  The testimony was clear that A.R.A.'s only home has been her home with Appellee.

**{¶30}** The sixth factor is the likelihood of safe reunification with a parent within a reasonable period of time.  The court already found that Appellant has not maintained even *de minimis* contact with the child, which this court affirmed.  And the child's mother is dead.  Thus, reunification with a parent within a reasonable period of time is highly unlikely.

**{¶31}** The seventh factor is the importance of providing permanency, stability, and continuity of relationships for the child.  Appellee testified that she has the means to provide for the child.  (Tr. 14-16).

**{¶32}** The eighth factor is the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest.  With Appellee, A.R.A. visits with her cousins and has sleepovers with them.  (Tr. 20).  She also spends time with her maternal aunts and uncles.  (Tr. 23).  Appellee and

A.R.A. spend their time watching cartoons, going on walks outside, playing with their cat and dog, and shopping.  (Tr. 19-20).

**{¶33}** The ninth factor is the child's adjustment to the child's current home, school, and community.  The child spends time with neighbors and at church.  (Tr. 23).  She will begin kindergarten in the Carrollton schools in the fall.  (Tr. 19).

**{¶34}** The tenth factor is the mental and physical health of all persons involved in the situation.  Appellee stated that she is 71 and she is in good physical and mental health. (Tr. 14, 17-18).

**{¶35}** The final factor is whether any person involved in the situation has been involved with a case where a child was abused or neglected, or a domestic violence case. There was no testimony going to this factor.

**{¶36}** Appellant further argues it appears the trial court did not consider several relevant factors such as the lack of contact A.R.A. has with any other family members; his assertion that the babysitter, and not Appellee had custody of A.R.A. leading up to the adoption; Appellee's ability to keep up with a five-year-old given her age of 71; and that Appellee has kept A.R.A. from knowing her father.

**{¶37}** These areas that Appellant takes issue with were also presented to the court.  Appellee testified that she is healthy and physically able to keep up with a five-year-old.  (Tr. 17-20).  Appellee also testified that while the child spends time with her maternal relatives, she does not spend time with Appellant or his relatives.  (Tr. 26-27). And she testified that over a year prior, there were times when A.R.A. would stay with the babysitter for "a few days."  (Tr. 30-31).  Thus, this information was before the court for its best interest determination.

**{¶38}** The evidence supports the probate court's finding that adoption of A.R.A. by Appellee is in the child's best interest.  While the better practice would be for the court to refer to the R.C. 3107.161(B) factors in relation to the evidence, there was sufficient evidence presented at the hearing going to the statutory factors for this Court to determine that the probate court considered the best interest factors in rendering its decision.  *See Matter of Adoption of M.R.M.*, 7th Dist. Mahoning No. 17 MA 0088, 2017-Ohio-7710, ¶

21; *In re Jones*, 5th Dist. Licking Nos. 99-CA-65, 99-CA-66, 99-CA-67, 99-CA-68, 99-CA-69, 1999 WL 1071746 (Nov. 15, 1999).

{¶39} The Ohio Supreme Court has stated:

The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. * * *

(Citations omitted); *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). In this case, we cannot find that the trial court abused its discretion in finding the adoption is in A.R.A.'s best interest.

{¶40} Accordingly, Appellant's sole assignment of error is without merit and is overruled.

{¶41} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.
Robb, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division, of Carroll County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**